IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States,<br><br>          Plaintiff,<br><br>   v.<br><br>Robert Tashbook,<br><br>          Defendant. | Case No. 01-cr-20160-CRB-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Robert Tashbook ("Tashbook") moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Mot. (dkt. 270); First Supplemental Motion (dkt. 239); Second Supplemental Motion (dkt. 266). Tashbook argues that compassionate release is warranted based on his medical conditions, his conditions of confinement, and his significant efforts at rehabilitation while incarcerated. While Tashbook's efforts are commendable, he does not present extraordinary and compelling reasons warranting release, and the Court cannot find that Tashbook would not present a danger to the safety of the community. Accordingly, Tashbook's motion is denied.

**I.    BACKGROUND**

    **A.    Tashbook's Criminal History**

Robert Tashbook is 55 years old and has been incarcerated for over twenty years. Hong Decl. (dkt. 241) Ex. A at 1–2. In 2002, Tashbook was convicted of attempting to entice a minor to engage in unlawful conduct in violation of 18 U.S.C. § 2422(b); interstate transportation of a minor with intent the minor engage in unlawful sexual conduct, in

violation of 18 U.S.C. § 2423(a); sexual exploitation of a minor with two prior convictions for sex offenses in violation of 18 U.S.C. § 2251(a); receipt of sexually explicit visuals with prior conviction for sex offense in violation of 18 U.S.C. § 2252(a)(2); and attempting to entice a minor to engage in unlawful conduct in violation of 18 U.S.C. § 2422(b). Id. at 2–6. He was sentenced to 60 years in custody, and his projected release date is December 3, 2052. Id. at 6.

Tashbook was also convicted of two prior sex offenses: travel in interstate commerce for the purpose of engaging in sexual acts with a minor, and possession of three or more visual depictions of a minor. Presentence Investigation Report ("PSR") at 16–20. Tashbook was sentenced to 24 months of imprisonment and three years of supervised release on those charges in the Eastern District of Texas. Id. Tashbook was released on February 6, 1998 and completed supervised release on February 5, 2001. Id. at 20.

### B.     Tashbook's Incarceration

While incarcerated, Tashbook has endured a variety of medical conditions, including testicular cancer, obesity, hypertension, sleep apnea, seizure disorder, chronic venous insufficiency, prediabetes, glaucoma, cataracts, poor circulation, pain in extremities, and mental health issues. Mot. at 8. He takes various prescriptions for these ailments. Id. at 9.

Tashbook has been disciplined for violations such as lying or falsifying a statement, refusing to obey orders, being unsanitary or untidy, being in an unauthorized area, and assaulting without serious injury. Hong Decl. Ex. D. at 1–2. Despite this, Tashbook's overall PATTERN risk level is low. Spencer Decl. (dkt. 270-1) Ex. C. To further his rehabilitation, he has completed over 150 classes, including an evidence-based recidivism reduction program, a faith-based reentry program, and courses on Jewish faith and law. Id. Exs. D, E.

The Court also received and reviewed letters of support for Tashbook from Jewish organizations, BOP volunteers, and formerly incarcerated individuals. Id. Ex. F.

### C. The Instant Motion

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Tashbook moves for compassionate release because his medical conditions, COVID-19, rehabilitation, and conditions of confinement warrant release. Mot. at 8–16. The United States opposes, arguing that Tashbook has not presented extraordinary and compelling reasons for his release, and that he remains a danger to the public. Opp'n (dkt. 241) at 10–21.

The BOP ordered a psychological evaluation, conducted by Dr. Katherine Sunder, to provide a diagnostic assessment of Tashbook's risk of sexual reoffending and to determine whether Tashbook meets criteria as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006. Precertification Report ("PR") (dkt. 273-1). To further assess Tashbook's potential danger to the community, the Court ordered a psychiatric examination of Tashbook, which was conducted by Dr. Fred Berlin. Order for Psychiatric Examination (dkt. 252).

## II. LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Under 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception, known as compassionate release, to reduce a sentence for "extraordinary and compelling reasons." For over thirty years, only the BOP Director could file a § 3582(c)(1)(A) motion for a sentence reduction on a defendant's behalf. However, as part of the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to allow a defendant to seek a reduction directly from the court, provided that the defendant first seeks a reduction from the BOP and that request has either been denied or 30 days have passed. See First Step Act of 2018, Pub. L. No. 115-391, Title VI, sec. 603(b)(1), § 3582, 132 Stat. 5194, 5239 (2018).

To decide a motion for compassionate release, a court must analyze, to the extent applicable, whether the § 3553(a) sentencing factors support release. 18 U.S.C. § 3582(c)(1)(A). These factors include the need for the sentence imposed to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the

3

offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed services (educational, vocational, medical) in the most effective manner. 18 U.S.C. § 3553(a)(2). If the sentencing factors support a sentence reduction, a court may grant the motion to reduce the defendant's sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction." Id. § 3582(c)(1)(A)(i).[1]

To determine what is meant by "extraordinary and compelling reasons," until recently, courts have looked to a policy statement promulgated by the Sentencing Commission back in 2006. See U.S.S.G. § 1B1.13 cmt n.1. Because the Commission crafted this policy statement before Congress authorized defendants to file compassionate release motions, the statement was not binding as to motions brought by defendants. United States v. Aruda, 993 F.3d 797, 801–02 (9th Cir. 2021). Nonetheless, that policy statement has "inform[ed]" this "court's discretion" in prior compassionate release cases. Id. at 802; see also, e.g., United States v. Ozkar, 21-cr-00144, 2022 WL 3973745, at *3 (N.D. Cal. Aug. 25, 2022).

This year, the Sentencing Commission amended U.S.S.G. § 1B1.13, providing the first guidance regarding the meaning of "extraordinary and compelling reasons" since the First Step Act was passed.[2] Because this amendment goes into effect on November 1, 2023, it is not binding on the Court. Nevertheless, as the Sentencing Commission's most recent statement on the meaning of § 3582(c)(1)(A)(i), and its first such statement since the First Step Act was passed, the 2023 amendment will "inform" the "[c]ourt's discretion" in this case, as the 2006 policy statement did in prior cases. Aruda, 993 F.3d at 802.

---

[1] Extraordinary and compelling reasons are not required if the defendant is over 70 years old and has served at least thirty years in prison. See 18 U.S.C. § 3582(c)(1)(A)(ii). As Tashbook meets neither requirement, the Court must find that extraordinary and compelling reasons warrant a reduction here.

[2] See U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (April 27, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf ("2023 Amendment"). All citations to § 1B1.13 in this order, unless otherwise noted, cite to the as-amended version.

4

### III. DISCUSSION

The Court addresses two issues raised by Tashbook's motion: First, whether he poses a danger to the community if released; and second, whether he raises an extraordinary and compelling reason warranting release.[3]

#### A. Dangerousness

While a court need not find that "the defendant is not a danger to the safety of any other person or the community" under § 3582(c)(1)(A)(i), such a finding is a requirement of the newly amended U.S.S.G. § 1B1.13(a)(2).[4] As such, because that amendment informs the Court's discretion, the Court first considers whether Tashbook would pose a danger to the safety of the community if released.

To determine dangerousness, the Court weighs the 18 U.S.C. § 3142(g) factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Here, the first three factors—nature and circumstances of Tashbook's offenses, the weight of the evidence against him, and his history and characteristics—indicate that he remains a danger to the community. He devised and executed schemes to lure children to travel to his state of residence to engage in illicit sexual conduct. PSR at 5–9. Moreover, as the government notes, he engaged in this criminal activity within a month of being terminated from supervised release, which stemmed from his prior convictions for similar conduct. Id. at 8. While it has been over two decades since Tashbook was sentenced, the severity of his crimes—particularly the fact that he recidivated within months, perhaps weeks, of termination of his prior supervised release—suggest that he remains a danger to

---

[3] Tashbook exhausted administrative remedies when Otisville Warden Pliler denied Tashbook's request for compassionate release. Mot. at 6–7; Mot. Ex. A. The government does not contest that this satisfies the exhaustion requirement. Opp'n at 6.

[4] In any case, the Court is required to assess the § 3553(a) factors, including "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

5

1   the community if and when he is again released from BOP custody and supervision.

2   　　　　It is more difficult to determine whether Tashbook continues to pose a danger to the
3   community after more than twenty years in prison. The Court has the benefit of two
4   psychiatric reports—by Dr. Sunder, on behalf of BOP, and by Dr. Berlin, tasked by the
5   Court to assess Tashbook—to make this determination.

6   　　　　Dr. Sunder conducted a Forensic Precertification Evaluation of Tashbook. See PR.
7   Because Tashbook declined to participate, Dr. Sunder used BOP and court records, such as
8   the filings in the present case, to conduct the evaluation. Id. at 2–3. ▓▓▓▓▓▓▓▓
9   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22  ▓▓

23  　　　　While these evaluations conclude that Tashbook does not have a particular
24  psychiatric condition that would make him more apt to recidivate, they do not conclude
25  that his reentry into the community would be without risk. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
27  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Because this fourth dangerousness factor is, at best,
28  neutral, and the other § 3142(g) factors overwhelmingly indicate that Tashbook remains a

1  danger to the community, the Court cannot conclude that Tashbook would not present
2  danger to the community if released.

### B.  Extraordinary and Compelling Reasons

Though the newly amended § 1B1.13 lists six circumstances that represent extraordinary and compelling reasons, only two are relevant to Tashbook's motion: Tashbook's medical conditions and the residual exception.[5]

#### 1.  Medical Conditions

A medical condition represents an extraordinary and compelling reason if the defendant demonstrates that he has a "serious physical or medical condition" that "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Additionally, under the newly amended § 1B1.13, medical circumstances can also be extraordinary and compelling if the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Id. § 1B1.13(b)(1)(C). Further, if the defendant's facility is "affected or at imminent risk of being affected" by an infectious disease outbreak or ongoing public health emergency, and "the defendant is at increased risk of suffering severe medical complications or death as a result of exposure" to the disease, such circumstances can constitute extraordinary and compelling reasons. Id. § 1B1.13(b)(1)(D).

Tashbook argues that he should be released because he has a variety of medical conditions—including testicular cancer, hypertension, and mental health issues—that require medical care and increase his risk of contracting COVID-19. Mot. at 8–10. In particular, he states that his "undisputed cancer diagnosis qualifies as extraordinary and

---

[5] The other circumstances are not relevant here because Tashbook is not at least 65 years old, see U.S.S.G. § 1B1.13(b)(2); Tashbook presents no evidence of family circumstances requiring him to care for children or a spouse, see id. § 1B1.13(b)(3); Tashbook is not a victim of abuse while incarcerated, see id. § 1B1.13(b)(4); and Tashbook did not receive an unusually long sentence within the meaning of § 1B1.13(b)(6).

7

1  compelling under USSG § 1B1.13." Reply (dkt. 247) at 4.

2      Tashbook presents no evidence that his medical conditions, including his cancer,
3  "substantially diminish[]" his ability "to provide self-care within the environment of a
4  correctional facility." See U.S.S.G. § 1B1.13(b)(1). Likewise, he presents no evidence
5  that he "is not expected to recover" from his cancer. ███████████████████
6  ████████████████████████████████████████████████
7  ████████████████████████████████████████████████
8  ████████████████████████████████████████████████
9  ████████████████████████████████████████████████
10 ████████████████████████████████████████████████
11 ████████████████████████████████████████████████
12 ████████████████████████████████████████████████
13 ████████████████████████████████████████████████
14 ██████████████████████ Because Tashbook is receiving adequate medical care and does
15 not explain how his medical condition "substantially diminishes" his ability to provide
16 self-care while incarcerated, his medical conditions, though serious, are not extraordinary
17 and compelling reasons under § 1B1.13(b)(2). See U.S.S.G. § 1B1.13(b)(2)(B).

18     Tashbook's argument regarding his heightened risk of COVID-19 also fails. By
19 February of 2021, Tashbook received two doses of the Moderna COVID-19 vaccine.
20 Hong Decl. Ex. B. While Tashbook tested positive for COVID-19 on January 26, 2022, he
21 fully recovered by February 4, 2022. Status Report (dkt. 253) Ex. 1 ¶ 31. Although
22 Tashbook questions the efficacy of the vaccine in a prison setting and has medical
23 conditions that increase risk of severe illness, Mot. at 9, 17–18, his recovery is in
24 accordance with research that overwhelmingly finds that the vaccine is highly effective at
25 reducing hospitalization and death. For example, a 2022 meta-analysis reported that the

---

[6] It is for this reason that Tashbook's cancer does not fall within the new "long-term or specialized medical care" exception. See U.S.S.G. § 1B1.13(b)(1)(C). This exception only applies if such medical care "is not being provided," id., but there is no evidence in the record that Tashbook has not been offered appropriate medical care for his conditions.

United States District Court
Northern District of California

two-dose regimen of the Moderna COVID-19 vaccine reduced the likelihood of hospitalization by 89 percent and death by 82 percent.[7] Accordingly, following overwhelming authority of courts across the country, the Court concludes that Tashbook's risk of COVID-19 after vaccination does not constitute an extraordinary and compelling reason for release. See, e.g., United States v. Ruelas, No. 18-CR-00048-LHK-7, 2021 WL 1615369, at *3 (N.D. Cal. Apr. 26, 2021) ("Defendant, who is 45 years old, recovered from COVID-19 last year, and will be fully vaccinated with the Moderna COVID-19 vaccine tomorrow, has failed to demonstrate extraordinary and compelling reasons justifying compassionate release."); United States v. Session, No. 06-CR-6091L, 2021 WL 2195505, at *1 (W.D.N.Y. June 1, 2021) ("The fact that [defendant] has contracted the virus without significant impact and in light of the fact that he has been vaccinated, his risk of further infection seems quite minimal."); United States v. Dixon, No. 5:17CR230, 2021 WL 2315193, at *2 (N.D. Ohio June 7, 2021) ("[T]he Court can no longer find that the COVID-19 pandemic can be relied upon to demonstrate extraordinary and compelling reasons."), aff'd, No. 21-3575, 2022 WL 2610338 (6th Cir. May 16, 2022); United States v. Hannigan, No. CR 19-373, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22, 2021) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.").

### 2. Residual Exception

Tashbook argues that two other circumstances give rise to extraordinary and compelling reasons warranting release: (1) his rehabilitation while in prison; and (2) the severely punitive conditions in which he has served the first twenty years of his sentence. See Mot. at 11–13.

---

[7] See Kazem Rahmani et al., The effectiveness of COVID-19 vaccines in reducing the incidence, hospitalization, and mortality from COVID-19: A systematic review and meta-analysis, Frontiers in Public Health (Aug. 26, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9459165.

9

### a. Rehabilitation

During his incarceration, Tashbook has pursued his Jewish faith and worked to help others with legal issues. Mot. at 12. The Court received letters of support from members of the Jewish community and other inmates that stated Tashbook has rehabilitated and is ready to re-enter society. Spencer Decl. Ex. F. For example, one stated that Tashbook "is ready for re-entry" and that volunteers "are ready to help out with whatever is needed," such as housing, medical care, and mental health counseling. Id. at 3. Another shared that Tashbook is a "role model in helping others in time of need without even being asked," and that Tashbook "regularly sent donations to charities important to him." Id. at 7. Moreover, Tashbook has completed over one hundred and fifty (150) classes, and Chief Otisville Psychologist Dr. Davis stated that Tashbook has made progress. Mot. at 11–12.

While Tashbook has made commendable efforts, he falls short of showing that his rehabilitation is so extraordinary and compelling as to warrant release. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This evidence "d[oes] not support compassionate release given the nature and circumstances of [Tashbook's] offense and significant criminal history." See United States v. Miller, No. 21-30230, 2022 WL 2304231, at *1 (9th Cir. June 27, 2022).

### b. Conditions of Confinement

Tashbook finally argues that his conditions of confinement have been severely punitive because he has been subject to isolation conditions throughout his sentence, as well as other disruptions due to the pandemic. Mot. at 13–15. At the outset, because the pandemic conditions Tashbook presents have been experienced by everyone in prison, courts routinely hold that such generalized conditions are not "extraordinary and compelling" grounds for release. See, e.g., United States v. Thomas, No. 3:17-CR-00051-SLG, 2021 WL 3924724, at *2 (D. Ala. Sept. 1, 2021) ("Conditions that are shared by

1  nearly every inmate in the country are not 'extraordinary and compelling,' and the
2  restrictions [defendant] is subject to are in no way unique to him.").

3  There is less authority on the question of whether the more individualized isolation
4  conditions, unrelated to COVID-19, that Tashbook describes in his motion are
5  extraordinary and compelling. However, the authority there is indicates that the more
6  appropriate avenue for such claims is a federal civil rights action, rather than a motion for
7  compassionate release. See, e.g., Demille v. Jenkins, No. 20-04559 EJD (PR), 2020 WL
8  5944424, at *2 (N.D. Cal. Oct. 7, 2020) ("With respect to her challenges to the conditions
9  of confinement at FCI, Petitioner must raise such claims in a federal civil rights action.");
10 United States v. Parsons, No. 2:19-CR-0030 KJM, 2021 WL 2003212, at *3 (E.D. Cal.
11 May 19, 2021) (same).

12 In any case, even if conditions of confinement such as severe, extended isolation
13 could be an extraordinary and compelling reason warranting release, this is not that case.
14 Tashbook states that he has spent nearly forty percent of his sentence in isolation. Mot. at
15 13. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17 ▇▇▇▇▇▇▇▇ Although Tashbook states that isolation generally has negative
18 consequences on mental health, he does not present any evidence showing how isolation
19 has impacted him specifically. Mot. at 15. To the contrary, Tashbook asserts that
20 throughout his sentence—including his time in isolation—he has completed numerous
21 classes, worked in food service, attended religious services, and received access to
22 healthcare. Mot. at 11–13, 16. Accordingly, Tashbook has been able to rehabilitate and
23 pursue his religious faith despite his conditions of confinement. Finally, even if
24 Tashbook's time in prison has been more punitive than envisioned at sentencing, he
25 presently has served only a third of his sentence; thus, release at this time would not be
26 warranted based on conditions of confinement alone.

27 Accordingly, Tashbook does not present an extraordinary and compelling reason
28 warranting compassionate release.

11

## IV. CONCLUSION

For the foregoing reasons, Tashbook's motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 25, 2023



CHARLES R. BREYER
United States District Judge